IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOUGLAS ROESER, et al.** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No: 1:06-cv-01579-PLF |
| ) | Judge Paul L. Friedman |
| **ENTERPRISE LEASING COMPANY, et al.** ) | Next Event: Joint Status Report |
| ) | Due: 6/15/07 |
| Defendants. ) | |

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT TO IDENTIFY DEFENDANTS

Plaintiffs Douglas Roeser and Sean Roeser, respectfully move pursuant to Federal Civil Court Rule 15 for leave to amend their complaint and provide the following Points and Authorities in support thereof:

#### FACTUAL BACKGROUND

The facts in this case demonstrate that on September 6, 2005, Defendant Enterprise leased a vehicle (the "Rental Car") to Mr. Roeser for his family's personal use. Unbeknownst to Mr. Roeser, however, Defendant Enterprise or its customers had previously reported to District of Columbia Metropolitan Police Department ("MPD") that the Rental Car had been stolen. Defendant Enterprise knew that the Rental Car had been reported as stolen when it rented the vehicle to Mr. Roeser but failed to advise Mr. Roeser of this fact and likewise failed to take the simple measure of verifying that the car was removed from District of Columbia's stolen vehicle database prior to renting the vehicle to Plaintiffs. Later on September 11, 2005 at approximately 10:45 pm, Mr. Roeser and R. (the "Roesers") were traveling home in the Rental Car on or about

Alabama Avenue S.E.  As they were traveling, Mr. Roeser and S.R. both noticed that an MPD officer was following their car without initiating his emergency lights and without signaling the Roesers to pull to the side of the road.  The officer, who later identified as Defendant Dale Vernick continued to follow the Roesers for nearly one (1) mile.  The Roesers drove in compliance with all traffic laws until they arrived in front of their home and parked the vehicle.  Moreover, Defendant Vernick and Caddell observed that Mr. Roeser was not behaving like a typical car thief, to wit, he was not attempting to flee the scene, speed up or drive the vehicle a short distance into Maryland avoiding the police.  Yet, Officer Vernick continued to follow Mr. Roeser without engaging his emergency lights.  Defendant Vernick also summoned other police units to the scene.

Upon arriving at their home address, Mr. Roeser exited his vehicle to enter his home address.  Defendant Vernick still had not engaged his emergency lights.  After Mr. Roeser exited the vehicle, Defendant Vernick then engaged his emergency lights. Already out of his vehicle and now confused, Mr. Roeser began to inquire why Defendant Vernick was following him without engaging his emergency lights until after he arrived at his home.  Also, Mr. Roeser immediately began to explain to Officer Vernick that the vehicle was a rental car.

By that time, Defendants Vernick and Caddell had called two other MPD units to the scene.  Officer Vernick immediately exited the car and drew and pointed his gun at Mr. Roeser despite the fact that Mr. Roeser was visibly not armed.  Officer Vernick told Mr. Roeser to "get in the fucking car!" Seeing the gun drawn and fearing for his life, Mr. Roeser began to yell for his wife.  Mrs. Roeser who was in their home began to watch and witness the incident.  Mr. Roeser then got back into his vehicle as instructed and waited.

Officer Vernick and Caddell then, in breach of police procedures and in violation of

Plaintiffs' constitutional rights, ultimately their guns drawn, approached Plaintiffs and began cursing and shouting demands to Mr. Roeser, holding him at gunpoint and putting him in fear of harm or death. Despite being informed by Mr. Roeser that the vehicle was a rental car, Defendant Vernick did not request Mr. Roeser's identification or rental documentation.

Defendant Vernick, with his gun drawn and pointed at Mr. Roeser, ordered Mr. Roeser out of the Rental Car. Once Mr. Roeser got out of the vehicle, Defendant Vernick immediately arrested him by handcuffing his hands behind his back. Mr. Roeser continually begged for Defendant Vernick to view his rental car documentation. Defendant Vernick ignored Mr. Roeser's requests. Then without cause, Defendant Vernick made Mr. Roeser lay face down in the street in the presence of his minor son, wife and neighbors with his hands handcuffed behind his back. After he handcuffed Mr. Roeser, Defendant Vernick continued to curse and yell at him and to hold him at gunpoint.

Simultaneously, Defendant Caddell approached SR on the passenger side with his gun drawn pointed at SR. Mr. Roeser, fearing for his son's life began to request that SR stay in the car. Defendant Vernick then commanded Defendant Caddell that "if he won't get out, pull your stick out on him!" Defendant Caddell opened the passenger side door and physically grabbed and pulled S.R., a minor, out of the Rental Car. Defendant Caddell pushed SR against the vehicle and immediately arrested him by handcuffing his hands behind his back. After handcuffing SR, Defendant Caddell searched his pockets and body. Officer Caddell then pushed SR to the ground and ordered him to sit on the curb next to his father with his hands handcuffed behind his back. Mr. Roeser laid handcuffed face down on the street for about five minutes. By this time, about three or four other officers had arrived at the scene and were standing over the Roesers as SR sat handcuffed on the curb and Mr. Roeser laid facedown in the view of their

family and neighbors.

Mrs. Roeser was forced to watch her son and husband get searched, arrested and humiliated in the presence of their family, neighbors and friends. Throughout the entire incident, Mr. Roeser explained that the vehicle was not stolen but that it was a rental car, to no avail. Defendants Vernick and Caddell held Mr. Roeser and SR arrested and handcuffed for thirty to forty-five minutes without ever asking for or reviewing their rental verification information.

Mr. Roeser later learned that the Officers' conduct arose from information they received, specifically, that the Rental Car was reported stolen and/or impounded by Enterprise. An MPD Officer later informed the Roesers that the tags on the vehicle were registered to another vehicle.

In violation of MPD policy and procedure and in order to cover up their violation of the Roeser's constitutional rights, Defendants Vernick and Caddell reported the incident not as an arrest, but as a "Stop and Frisk." In their inaccurate report, Defendants Vernick and Caddell reported that the entire incident only occurred within one (1) minute; from 11:18 pm to 11:18 pm. See Exhibit 1, Stop and Frisk Report, Box 2. In further violation of MPD policy and procedure, Defendants Vernick and Caddell masked their violation of the Roeser's constitutional rights, by intentionally omitting that they arrested the Roesers, that they used force against the Roesers and that they detained the Roesers for thirty to forty-five minutes without ascertaining whether the vehicle was stolen or rented.

### ARGUMENT

As Metropolitan Police Officers, Defendants Vernick and Caddell were acting under color of the laws of the District of Columbia. Plaintiffs, therefore, properly identify Officer Thomas Caddell in their amended pleading and assert allegations of the actions and inactions of Defendant Vernick and Caddell which displayed a reckless or callous disregard of, or

indifference to, the rights of Plaintiffs to be free from unreasonable searches and seizures, excessive force and unlawful arrests in violation of the U.S. Constitution.

Defendants' document production and initial depositions have also revealed information, unknown to Plaintiffs, about Defendants Vernick and Caddell's actions and inactions during and after the incident in which Defendants improperly reported the incident in which Plaintiffs were unlawfully arrested and detained.

In respect to Defendant Enterprise, Plaintiffs allege additional facts about Enterprises negligence which resulted in Plaintiffs being unlawfully arrested, detained and subjected to excessive force by Defendants Vernick and Caddell.

Additionally, Plaintiff S.R. is now an adult and the pleadings are amended to reflect this fact and to add him as an individual party.

Under the circumstances present, Defendants will not be legally prejudiced in allowing Plaintiffs' motion for leave to amend.  Although all parties have exchanged Rule 26 (a)(1) Initial Disclosures, discovery is still ongoing and does not close until September 2007.  Moreover, the parties have only participated in initial depositions noticed by Defendant Enterprise of Officers Vernick and Caddell and of Plaintiffs.  Defendant District has agreed to produce its and Defendant Vernick's responses to Plaintiffs' discovery, Officers Vernick and Caddell's depositions are still open and Plaintiffs intend to depose the same after Defendants' discovery responses are received.

Nevertheless, information contained in Defendants' Initial Disclosures has allowed Plaintiffs to identify the other MPD Officer responsible for the violation of Plaintiffs constitutional rights and many of the facts and circumstances surrounding this incident which are now contained in the amended complaint.

Federal Civil Procedure Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." As the US Supreme Court in <u>Foman v. Davis</u>, 83 S. Ct. 227 stated:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 MOORE, FEDERAL PRACTICE (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

In order to ensure that Plaintiffs will be able to fully and fairly set forth their causes of actions against Defendants, the Court should grant their motion for leave to amend the complaint. Justice so requires.

WHEREFORE, Plaintiffs Douglas Roeser and Sean Roeser respectfully request the Court grant this Motion and enter an Order allowing Plaintiffs leave to amend their complaint.

Respectfully submitted,

BOND LAW FIRM, PLLC.

By:    /s/ Johnnie D. Bond, Jr.
Johnnie D. Bond, Jr., Esq. (#485488)
1424 K Street, NW, Ste. 660
Washington, D.C. 20005
(202) 328-1354 Phone
(202) 318-4528 Fax
**Attorneys for Plaintiffs**
**jbond@bondpllc.com**